Ninth Circuit No. 08-15567

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

TROY MATTOS, et al.,
*Plaintiffs - Appellees,*
v.
DARREN AGARANO, et al.,
*Defendants - Appellants.*

*Supplemental Brief of Amici Curiae National Police Accountability Project and Human Rights Defense Center In Support of Plaintiffs-Appellees*

John Burton
Timothy J. Midgley
THE LAW OFFICES OF JOHN BURTON
65 North Raymond Avenue, Suite 300
Pasadena, California 91103
Voice: (626) 449-8300/Fax: (626) 449-4417

Peter M. Williamson
WILLIAMSON & KRAUSS
21800 Oxnard Street, Suite 305
Woodland Hills, California 91367
Voice: (818) 226-5700/Fax: (818) 226-5704

*Counsel for Amici Curiae National Police Accountability Project
and Human Rights Defense Center In Support of Plaintiffs-Appellees
(Additional Counsel Continued Inside)*

*Additional Counsel for Amici Curiae National Police Accountability Project*

*and Human Rights Defense Center In Support of Plaintiffs-Appellees*
(alphabetical order)

Frederick K. Brewington
556 Peninsula Blvd.
Hempstead, New York 11550
(516) 489-6959

Fred Diamondstone
710 Second Ave., Suite 700
Seattle, WA 98104
(206) 812-0720

Patrick Geckle
1845 Walnut St. Suite 2300 Philadelphia, Pa. 19103
(215) 735 3326

William H. Goodman
Julie H. Hurwitz
1394 East Jefferson Ave.
Detroit, MI 48207
(313) 567-6170

Michael Haddad
505 Seventeenth Street
Oakland, California 94612
(510) 452-5500

Randall L. Kallinen
511 Broadway Street
Houston, Texas 77012
(713) 320-3785

Benjamin G. Kelsen
179 Cedar Lane
Teaneck, NJ 07666
(201) 692-0073

Stephen M. Latimer
179 Cedar Lane Suite B
Teaneck NJ 07666
(973) 748-0443

David B. Rankin
350 Broadway, Suite 700
New York, New York 10013
(212) 226-4507

Daniel Romano
26555 Evergreen Road, Suite 1500
Southfield, MI 48076
(248) 750-0270

Michael E. Rose
500 Yamhill Plaza Building
815 SW Second Avenue
Portland, Oregon 97204-3005
(503) 221-1792

Mary Anna Soifer
2766 Santa Rosa Avenue
Altadena, CA 91001
(626) 794-9978

Wylie Stecklow
10 Spring
New York, NY 10012
(212) 566-8000

Lance Weber
Post Office Box 2420
West Brattleboro, VT 05303
(802) 579-1309

Julia Yoo
105 West F Street, Fourth Floor
San Diego, CA 92101
(619) 233-1525

# TABLE OF CONTENTS

Contents                                                                                              Page

TABLE OF CONTENTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.     Introduction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CERTIFICATION OF ELECTRONIC SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# TABLE OF AUTHORITIES

**Cases**   Page(s)

*Ashcroft v. al-Kidd*,
    563 U.S. \_\_\_\_ (2011) .................................................. 1

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998) .................................................. 6,8

*Curley v. Klem*,
    298 F.3d 271 (3d Cir. 2002) .......................................... 5

*Drummond v. City of Anaheim*,
    343 F.3d 1052 (9th Cir. 2003),
    *cert. denied*, 542 U.S. 918 (2004), ................................. 2

*Ewolski v. City of Brunswick*,
    287 F.3d 492 (6th Cir. 2002) ......................................... 6

*Graham v. Connor*,
    490 U.S. 386 (1989) .................................................... 1

*Headwaters Forest Defense v. County of Humboldt*,
    276 F.3d 1125 (9th Cir. 2002) ........................................ 3

*Heston v. TASER International, Inc.*,
    Ninth Cir. Case Nos. 09-15327 and 09-15440 (May 5, 2011) ............. 4

*Illinois v. Gates*,
    462 U.S. 213 (1983) .................................................... 5

*McCormick v. City of Fort Lauderdale*,
    333 F.3d 1234 (11th Cir. 2003) ....................................... 5

*Mendenhall v. Riser*,
    213 F.3d 226 (5th Cir. 2000) ......................................... 5

*Wollin v. Gondert*,
192 F.3d 616 (7th Cir. 1999) ............................................... 5

**Other Authorities**                                                           **Page**

42 U.S.C. § 1983 .................................................... 1

Greabe, John M.M. *Mirable Dictum!: The Case for "Unnecessary"*
       *Constitutional Rulings in Civil Rights Damages Actions*,
       74 Notre Dame L. Rev. 403, 410 (1999) ........................ 4

Kamin, Sam, *Harmless Error and the Rights/Remedies Split*,
       88 Virginia L. Rev. 1 (2002) ................................. 4

Levinson, Daryl J., *Rights Essentialism and Remedial Equilibration,*
       99 Colum. L.Rev. 867 (1999) ................................. 6

Sloane, C.M., T.C. Chan, G.M. Vilke,
       *Thoracic Spine Compression Fracture after TASER Activation*,
       J Emerg Med. 2008:34(3):283-5 ............................. 3

I.        Introduction

Amici curiae National Police Accountability Project (NPAP) and Human Rights Defense Center (HRDC) contend that the decision in *Ashcroft v. al-Kidd*, 563 U.S. ____ (2011), simply restates existing qualified immunity law and should not affect this en banc review. Amici oppose any expansion of qualified immunity – a judicially created doctrine unsupported by the text of 42 U.S.C. § 1983 or the Constitution. Qualified immunity frustrates the Congressional intent underlying section 1983 by obscuring rather than clarifying constitutional lines, retarding the law's development, and institutionalizing sub-constitutional conduct. It should apply only to questions of law, not fact.

*Al-Kidd* turned on whether a high government official could be liable for authorizing the pretextual use of material witness warrants, a legal question of first impression. Here, however, the legal contours of the right to be free from excessive force have been established for decades by *Graham v. Connor*, 490 U.S. 386 (1989), and its progeny. The matter before the en banc panel turns solely on issues of fact – essentially whether the quantum of force involved in firing ECDs, including the risk of cardiac arrest and death, justified its use under the facts presented to the officers.

Amici reiterate their concern that the Circuit should not try to adjudicate such complex factual questions on interlocutory appeals from district court denials of summary judgment motions. The facts should be developed at a trial. Accordingly, the denial of qualified immunity should be affirmed and the case remanded for further proceedings.

II. Argument

Amici agree with the supplements of plaintiff-appellee and amicus curiae ACLU of Hawa'ii that *al-Kidd* does not change existing law regarding qualified immunity, and has no bearing on this case, which turns on factual, rather than legal, questions.

In *Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), *cert. denied*, 542 U.S. 918 (2004), a case of cardiac arrest due to alleged "compressional asphyxia," this Court stressed that the evaluation of qualified immunity is not confined to decisions of the Supreme Court or the Ninth Circuit.

> Viewing the evidence in the light most favorable to [plaintiff], we conclude that the officers had "fair warning" that the force they used was constitutionally excessive even absent a Ninth Circuit case presenting the same set of facts. . . . [T]he officers received training from their own police department explaining specifically that "when one or more [officers] are kneeling on a subject's back or neck to restrain him, compression asphyxia can result ['t]hat may be a precipitating factor in causing death.'" [The defendant]'s training materials are relevant not only to whether the force employed in this case was objectively unreasonable, . . . but also to whether reasonable officers would have been on notice that the force employed was objectively unreasonable.

*Id.* at 1061-62. Indeed, law enforcement training guidelines are far more likely to be read and considered by the reasonable police officer than appellate opinions.

Here, as explained in amici's principal brief, the ECD manufacturer, TASER International, Inc., distributes training materials which put officers on notice of the substantial risks of serious injuries posed by its products. During ECD training many officers experience first hand – albeit in a highly controlled environment – the excruciating pain caused by ECD electrical current. Infliction of pain alone, when not justified, violates clearly established law prohibiting excessive force. *See, e.g., Headwaters Forest Defense v. County of Humboldt*, 276 F.3d 1125, 1130-31 (9th Cir. 2002). Other risks about which the manufacturer warns include disfiguring scars from drive stun applications, darts hitting sensitive organs such as an eye or genitalia, and the ignition of flammable substances.

Both TASER training materials and common sense dictate that ECDs are particularly likely, in field situations, to cause traumatic injuries due to falls, as the subject collapses with arms paralyzed, unable to protect himself or herself from impact against an asphalt street or a concrete curb. In addition, the intense muscle contractions caused by the device can result in serious orthopaedic fracture or dislocation.[1]

The most serious danger is cardiac arrest, especially when exposure is to the chest, or is prolonged, or the person targeted is suffering from extreme agitation or delirium. Since amici filed their initial brief, this Circuit affirmed the wrongful death verdict for plaintiffs in *Heston v. TASER International, Inc.*, Ninth Cir. Case Nos.

---

[1] *See* C.M. Sloane, T.C. Chan, G.M. Vilke, *Thoracic Spine Compression Fracture after TASER Activation*, J Emerg Med. 2008:34(3):283-5 (back broken during voluntary exposure)

09-15327 and 09-15440 (May 5, 2011), arising from cardiac arrest caused by ECD applications.

Amici urge that the en banc panel reject defendants' argument that contours governing ECD use are too uncertain to allow juries to determine excessive force liability. If the en banc panel were simply to determine that the law is too unclear for these cases to proceed to trial, the law will be denied clarity. *See, e.g.*, Sam Kamin, *Harmless Error and the Rights/Remedies Split*, 88 Virginia L. Rev. 1, 49 (2002) ("To say that a case is close is to say that the law is not well established; to say that the law is not well-established is to say that the defendant is entitled to qualified immunity; to say that the defendant is entitled to qualified immunity is to say that the Court need not resolve the merits of the close case. This nearly circular analysis could serve to stagnate the substance of constitutional law almost indefinitely."); John M.M. Greabe, *Mirable Dictum!: The Case for "Unnecessary" Constitutional Rulings in Civil Rights Damages Actions*, 74 Notre Dame L. Rev. 403, 410 (1999) ("The requirement that the allegedly violated right be clearly established at the time of the action in question tends, if not to 'freeze' constitutional law, then at least to retard its growth through civil rights damages actions. The corpus of constitutional law grows only when courts address novel constitutional questions, yet a novel claim, by definition, seeks to establish a right that is not already 'clearly established.'")

Applying qualified immunity to avoid deciding constitutional issues in a case such as this one does more than deprive victims of compensation for proven constitutional violations. It can operate to establish sub-constitutional standards for future governmental conduct. This tendency is particularly true for police practices, such as ECD usage, that affect many individuals. For example, a number of circuits have routinely employed the concept of "arguable probable cause" for civil-rights cases based on wrongful search or arrest. *See, e.g., Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) ("[S]ubjective intent, motive, or even outright animus are irrelevant in a determination of qualified immunity based on arguable probable cause to arrest"); *Wollin v. Gondert*, 192 F.3d 616, 621 (7th Cir. 1999) (discussing "arguable probable cause" in the context of a qualified immunity defense). Given the fact that probable cause can be established on facts that show only a "fair probability" of criminal conduct (a "practical, nontechnical conception"), *Illinois v. Gates*, 462 U.S. 213, 231 (1983), to permit "arguable" probable cause to justify an arrest or search reduces the Fourth Amendment's core protection to a very low level indeed.

The same problem arises in cases alleging excessive force. *See, e.g., McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1245 n.16 (11th Cir. 2003) (per curiam) (ruling that law was not clearly established that surprise use of pepper spray violated Constitution); *Curley v. Klem*, 298 F.3d 271, 282 (3d Cir. 2002) (stating that historical facts had to be resolved by jury before determination of objective reasonableness could be made as to officer's shooting of another officer mistaken for suspect); *Ewolski v. City*

*of Brunswick*, 287 F.3d 492, 505 (6th Cir. 2002) ("Even if genuine issues of material fact did exist as to whether a reasonable officer would have perceived an immediate threat . . . we would still find summary judgment to be appropriate on the basis of the 'clearly established' prong of the qualified immunity test."). If the Circuit were to sanction the "reasonable" uses of unreasonable force in these ECD cases, officers will face no legal sanction when applying sub-constitutional standards. As Professor Levinson observed:

> [O]ne might doubt the extent to which governmental officials whose behavior is governed by constitutional law care much about constitutional rights except as predictors of legal risk, which is a function of remedies – especially in the context of criminal justice where there are strong normative reasons for pushing against constitutional limits.

Daryl J. Levinson, *Rights Essentialism and Remedial Equilibration*, 99 Colum. L.Rev. 867, 911 (1999). Most importantly, when the law remains unclear public officials are denied the information they need to comport their conduct with the Constitution. *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[I]f the policy of avoidance were always followed in favor of ruling on qualified immunity whenever there was no clearly settled constitutional rule of primary conduct, standards of official conduct would tend to remain uncertain, to the detriment both of officials and individuals. An immunity determination, with nothing more, provides no clear standard, constitutional or nonconstitutional.").

It is essential to understand the effect the decision in this case will have on police training, which is crucial to the ability of a police department to insure that its line officers obey the Constitution. Deciding these cases by asking only whether the law, as applied to these particular facts, was previously established blurs the line between constitutional and unconstitutional police methods and makes the job of training officers considerably more difficult. If repeated qualified immunity decisions postpone indefinitely the resolution of whether any particular ECD use violates the Constitution, training officers cannot give clear direction and instruction to patrol officers about what the Constitution requires. What they can say is that "you can't get in trouble whatever you do in this situation, because the constitutional law is unclear."

Granting qualified immunity merely tells a defendant what he or she can get away with; determining the merits of a constitutional claim clarifies standards, gives public officials an opportunity to comply, makes case outcomes more predictable for counsel, and simplifies later adjudications.

Finally, the law applicable to excessive force claims, including those based on ECD use, cannot be effectively litigated in any context other than a damages action against individual officers: standing requirements often prevent an individual from seeking injunctive relief against the use of a particular law enforcement tactic; *Monell* jurisprudence may make a civil suit against the municipality unlikely to succeed; Fourth-Amendment claims cannot be made in petitions for a writ of habeas corpus; and often a search or seizure accomplished with excessive force does not produce fruits to be

challenged in a suppression hearing prior to trial. *See County of Sacramento v. Lewis*, 523 U.S. at 842 n.5 (finding that, if a court dismisses a claim on qualified immunity, resolution of the substantive issue "would require the issue to arise in a suit to enjoin future conduct, in an action against a municipality, or in litigating a suppression motion in a criminal proceeding").

In other words, there are some claims that, if they are not adjudicated in the context of a money damages action against an individual officer cannot be adjudicated at all. The constitutionality of ECD use by police officers is among them.

## III. Conclusion

Again, amici urge the Court to affirm the denial of qualified immunity in both *Brooks* and *Mattos*, and to remand the cases for trials on their merits so that the respective finders of fact can determine, based on a full record, whether the defendants' use of ECDs to shock the plaintiffs were objectively reasonable under the circumstances.

Respectfully submitted,

Dated: June 16, 2011             THE LAW OFFICES OF JOHN BURTON


By:  _____/S/_____
John Burton
Attorneys for *Amici Curiae*
*National Police Accountability Project*
*and Human Rights Defense Center*

## CERTIFICATION OF ELECTRONIC SERVICE

*MATTOS v. AGARANO*
Ninth Circuit Case Number: 08-15567

I, Sandy Leonardis, certify that on June 16, 2011, I electronically filed the foregoing Brief of Amici Curiae National Police Accountability Project and Human Rights Defense Center In Support of Plaintiffs-Appellees with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: June 16, 2011

*Sandy Leonardis*

Sandy Leonardis